Laurel I. Handley (NV Bar #9576)
Krista J. Nielson (NV Bar #10698)
PITE DUNCAN, LLP
520 South 4th St., Suite 360
Las Vegas, Nevada 89101
Telephone: (858) 750-7600
Facsimile: (702) 685-6342
lhandley@piteduncan.com
*Attorneys for Proposed Intervenor Federal National
Mortgage Association and Defendant CitiMortgage, Inc.*

Leslie Bryan Hart, Esq. (SBN 4932)
John D. Tennert, Esq. (SBN 11728)
FENNEMORE CRAIG JONES VARGAS
300 S. Second St., Suite 1510
Reno, Nevada 89501
Tel: 775-788-2228 Fax: 775-788-2229
*lhart@fclaw.com; jtennert@fclaw.com*

Asim Varma, Esq.*
*Asim.Varma@aporter.com*
Howard N. Cayne, Esq.* .
*Howard.Cayne@aporter.com*
Michael A.F. Johnson, Esq. *
*Michael.Johnson@aporter.com*
ARNOLD & PORTER LLP
555 12th Street NW
Washington, DC 20004
Tel: (202) 942-5000  Fax: (202) 942-5999
*pro hac vice petitions to be submitted
Attorneys for Proposed Intervenor Federal Housing Finance Agency*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LN MANAGEMENT LLC SERIES 7937 SIERRA RIM,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN T. PFEIFFER; SABRINA S. PFEIFFER; and CITIMORTGAGE, INC.,<br><br>Defendants. | CASE NO. 2:13-cv-01934-JCM-PAL<br><br>**STIPULATION TO ENTRY OF ORDER AND PROPOSED ORDER PERMITTING THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR OF THE FEDERAL NATIONAL MORTGAGE ASSOCIATION, TO  INTERVENE** |

     1.     The Federal National Mortgage Association ("Fannie Mae") and the Federal

Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for Fannie Mae (together,

"Petitioners"), seek to intervene in the above-captioned action pursuant to Fed. R. Civ. P. 24(b) and

12 U.S.C. § 4617(b)(2)(A)(i).

*Permissive Intervention*

2. Fed. R. Civ. P. 24(b) enables this Court to permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

3. Because Fannie Mae avers ownership of a mortgage loan on the Property at issue in this action, Fannie Mae has a claimed property interest that Plaintiff seeks to extinguish by this action.

4. FHFA has a direct interest in protecting Fannie Mae's claimed rights to property. On September 6, 2008, FHFA's Director appointed the FHFA Conservator of Fannie Mae and the Federal Home Loan Mortgage Corporation in accordance with the Housing and Economic Recovery Act of 2008, Pub. L. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. § 4617) ("HERA"), and the Federal Housing Enterprises Financial Safety and Soundness Act of 1992 (12 U.S.C. § 4501, et. seq.). As Conservator, FHFA has succeeded to "all rights, titles, powers, and privileges" of Fannie Mae. *See* 12 U.S.C. § 4617(b)(2)(A)(i). Moreover, FHFA is charged with taking necessary steps to "preserve and conserve the assets and property of [the Enterprises]" and "take over the assets of and operate [the Enterprises] with all the powers of the shareholders, the directors, and the officers of [the Enterprises]." *Id.* at §§ 4617(b)(2)(B)(i), (D)(ii). Thus, FHFA has a substantial interest in Plaintiff's action seeking to quiet title and declare extinguished a purported property interest that Fannie Mae claims to hold. *See* 12 U.S.C. §§ 4617(b)(2)(B)(i), 4617(b)(2)(B)(iv).

5. The Petitioners seek to protect Fannie Mae's property interest and present the statutory defense that Plaintiff's claim of free and clear title to the property at issue in this case (the "Property") is barred by 12 U.S.C. § 4617(j)(3), which Petitioners contend preempts conflicting state law and precludes a homeowner's association sale from extinguishing Fannie Mae's interest in the Property. This statutory defense shares a common question of law or fact with the main action, and is articulated in the Answers Petitioners have filed herewith. Accordingly, permissive intervention under Rule 24(b) is warranted.

*Intervention of Right*

6.    In the alternative, FHFA asserts that it has an unconditional federal statutory right to intervene in this matter, *see* Fed. R. Civ. P. 24(a)(1), and to assert its interests in a manner consistent with the Conservator's powers and duties.

7.    Pursuant to HERA, FHFA asserts that it has unqualified authority to protect Fannie Mae's assets and property. *See* 12 U.S.C. § 4617(b)(2)(A)(i); 12 U.S.C. § 4617(b)(2)(D)(i)-(ii). Because Fannie Mae claims an interest in the Property at issue here, the Conservator has authority to intervene to protect that claimed interest.

8.    Accordingly, FHFA asserts it has an unconditional federal statutory right to intervene in this matter, *see* Fed. R. Civ. P. 24(a)(1), and to assert its interests in a manner consistent with the Conservator's powers and duties.

9.    Plaintiff and Defendant CitiMortgage, Inc. consent to this motion to intervene. The remaining named defendants have not appeared in this action.

10.    Pursuant to Fed. R. Civ. P. 24(c), Petitioners attach as Exhibits A and B their intended Answers.

## STIPULATION

Proposed Intervenors Fannie Mae and FHFA, Plaintiff LN Management LLC Series 7937 Sierra RIM, and Defendant CitiMortgage, Inc., through their attorneys of record, hereby stipulate and request that the Court make this stipulation an order of the Court:

> Fannie Mae and FHFA shall be permitted to intervene in the above-referenced action pursuant to 12 U.S.C. § 4617(b)(2)(A)(i) and Fed. R. Civ. P. 24.

DATED this 1st day of May, 2015.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ Kerry P. Faughnan
Kerry P. Faughnan, Esq. (SBN 12204)
P.O. Box 335361
North Las Vegas, Nevada 89033
Tel: (702) 301-3096
kerry.faughnan@gmail.com
Attorney for Plaintiff LN Management Series
7937 Sierra RIM


By: /s/ Laurel I. Handley
Laurel I. Handley, Esq. (SBN 9576)
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935
Tel: (858) 750-7600 Fax: (619) 590-0935
lhandley@piteduncan.com
Attorneys for Proposed Intervenor Federal
National Mortgage Association and
Defendant CitiMortgage, Inc.


By: /s/ Leslie Bryan Hart
Leslie Bryan Hart, Esq. (SBN 4932)
John D. Tennert, Esq. (SBN 11728)
FENNEMORE CRAIG JONES VARGAS
300 S. Second St., Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2228 Fax: (775) 788-2229
lhart@fclaw.com; jtennert@fclaw.com

and

By: /s/ Asim Varma
Asim Varma, Esq.*
Asim.Varma@aporter.com
Howard N. Cayne, Esq.*
Howard.Cayne@aporter.com
Michael A.F. Johnson, Esq.*
Michael.Johnson@aporter.com
ARNOLD & PORTER LLP
555 12th Street NW
Washington, DC 20004
Tel: (202) 942-5000  Fax: (202) 942-5999
Attorneys for Proposed Intervenor Federal
Housing Financing Agency

* pro hac vice petitions to be submitted

## ORDER

**IT IS SO ORDERED.**

DATED this 5th day of May, 2015.


UNITED STATES MAGISTRATE JUDGE

**CERTIFICATE OF SERVICE**

1

2        I, the undersigned, declare:  I am, and was at the time of service of the papers herein

3   referred to, over the age of 18 years, and not a party to this action.   My business address is 520

4   South Fourth Street, Suite 360, Las Vegas, Nevada 89101.

5        I hereby certify that on May 1, 2015, I electronically transmitted the attached document to

6   the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic

7   Filing to the following CM/ECF registrants:

8   Kerry P. Faughnan, kerry.faughnan@gmail.com

9        I declare under penalty of perjury under the laws of the United States of America that the

10   foregoing is true and correct.

11        Executed this ___1___ day of May 2015, at Las Vegas, Nevada.

12

13                                        NICOLE L. LANE

14

15   4766856.wpd

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# EXHIBIT A

LAUREL I. HANDLEY (NV Bar #9576)
KRISTA J. NIELSON (NV Bar #10698)
**PITE DUNCAN, LLP**
520 South 4th Street, Suite 360
Las Vegas, Nevada 89101
Telephone: (858) 750-7600
Facsimile: (702) 685-6342
E-mail: knielson@piteduncan.com

Attorneys for Proposed Intervenor, FEDERAL NATIONAL MORTGAGE ASSOCIATION

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| LN MANAGEMENT LLC SERIES 7937 SIERRA RIM, | Case No.: 2:13-cv-01934-JCM-PAL |
| Plaintiff, | **PROPOSED INTERVENOR FANNIE MAE'S ANSWER TO COMPLAINT AND COUNTERCLAIM** |
| vs. | |
| BENJAMIN T. PFEIFFER, an individual; SABRINA S. PFEIFFER, and individual: CITIMORTGAGE, INC.: and DOES 1 through 10, inclusive, | |
| Defendants. | |

COMES NOW Proposed Intervenor, FEDERAL NATIONAL MORTGAGE ASSOCIATION ("Fannie Mae") by and through its counsel of record, Pite Duncan, LLP, and provides its Answer to Plaintiff, LN MANAGEMENT LLC SERIES 7937 SIERRA RIM's ("Plaintiff" or "LNM"), Complaint on file herein, admitting, denying, and alleging as follows:

### ANSWER TO COMPLAINT

1.      Answering Paragraph 1 of the Complaint, Fannie Mae admits the allegations contained therein.

2.      Answering Paragraph 2 of the Complaint, Fannie Mae lacks sufficient information to form a belief as to the truth of the allegations, and on that basis denies each and every allegation contained therein.

3.      Answering Paragraph 3 of the Complaint, Fannie Mae admits that Benjamin T.

- 1 -

1   Pfeiffer was a trustor under a Deed of Trust recorded in the Official Records of Clark County,

2   Nevada as Instrument No.: 20040702-0001246, encumbering the real property located at 7937

3   Sierra Rim Drive, Las Vegas, Nevada 89131 ("Property").   As to the remaining allegations,

4   Fannie Mae lacks sufficient information to form a belief as to the truth of the allegations, and on

5   that basis denies each and every remaining contained therein.

6          4.     Answering Paragraph 4 of the Complaint, Fannie Mae admits that Sabrina S.

7   Pfeiffer was a trustor under a Deed of Trust recorded in the Official Records of Clark County,

8   Nevada as Instrument No.: 20040702-0001246, encumbering the Property.   As to the remaining

9   allegations, Fannie Mae lacks sufficient information to form a belief as to the truth of the

10  allegations, and on that basis denies each and every remaining contained therein.

11         5.     Answering Paragraph 5 of the Complaint, Fannie Mae admits that CitiMortgage,

12  Inc., is the successor beneficiary of a Deed of Trust recorded on July 2, 2004, in the Official

13  Records of Clark County, Nevada as Instrument No.: 20040702-0001246 and that Fannie Mae is

14  the owner of the corresponding loan.   Fannie Mae also admits that Nevada State Bank was the

15  original lender and beneficiary under the Deed of Trust. Fannie Mae lacks sufficient information

16  to form a belief as to the truth of the remaining allegations, and on that basis denies each and

17  every remaining allegation contained therein.

18         6.     Answering Paragraph 6 of the Complaint, Fannie Mae lacks sufficient

19  information to form a belief as to the truth of the allegations, and on that basis denies each and

20  every allegation contained therein.

21                                  **GENERAL ALLEGATIONS**

22         7.     Answering Paragraph 7 of the Complaint, Fannie Mae admits that a Trustee's

23  Deed Upon Sale was recorded on September 20, 2013, in the Official Records of Clark County,

24  Nevada as Instrument No. 201309200001394. Fannie Mae further admits that the Trustee's Deed

25  Upon Sale states that Absolute Collection Services, LLC ("ACS"), "grant[s] and convey[s], but

26  without warranty expressed or implied to: LN Management LLC, Series 7937 Sierra Rim, PO

27  Box 36208, Las Vegas, NV 89133 (herein called Grantee), all its right, title and interest in that

28

1  certain property situated in County of Clark, State of Nevada, described as follows: 7937 Sierra

2  Rim Dr., Las Vegas, NV 89131…" Fannie Mae lacks sufficient information to form a belief as to

3  the truth of the remaining allegations, and on that basis denies each and every remaining

4  allegation contained therein.

5          8.      Answering Paragraph 8 of the Complaint, Fannie Mae admits that a Trustee's

6  Deed Upon Sale was recorded on September 20, 2013, in the Official Records of Clark County,

7  Nevada as Instrument No. 201309200001394. Fannie Mae further admits that the Trustee's Deed

8  Upon Sale states that ACS, "grant[s] and convey[s], but without warranty expressed or implied

9  to: LN Management LLC, Series 7937 Sierra Rim, PO Box 36208, Las Vegas, NV 89133 (herein

10  called Grantee), all its right, title and interest in that certain property situated in County of Clark,

11  State of Nevada, described as follows: 7937 Sierra Rim Dr., Las Vegas, NV 89131…" Fannie

12  Mae lacks sufficient information to form a belief as to the truth of the remaining allegations, and

13  on that basis denies each and every remaining allegation contained therein.

14          9.      Answering Paragraph 9 of the Complaint, Fannie Mae admits that it had an

15  interest and continues to have an interest in the property.

16         10.    Answering Paragraph 10 of the Complaint, Fannie Mae denies the allegations

17  contained therein.

18         11.    Answering Paragraph 11 of the Complaint, Fannie Mae lacks sufficient

19  information to form a belief as to the truth of the allegations, and on that basis denies each and

20  every allegation contained therein.

21                    **FIRST CLAIM FOR RELIEF**

22                    **(Quiet Title)**

23         12.    Fannie Mae repeats and incorporates each of its responses to Paragraph 1 through

24  11 though as if fully stated herein.

25         13.    Answering Paragraph 13 of the Complaint, Fannie Mae denies the allegations

26  contained therein.

27         14.    Answering Paragraph 14 of the Complaint, Fannie Mae denies the allegations

ANSWER TO COMPLAINT AND COUNTERCLAIM

1  contained therein.

2      15.     Answering Paragraph 15 of the Complaint, Fannie Mae denies that Plaintiff is

3  entitled to the relief requested.

4      16.     Answering Paragraph 16 of the Complaint, Fannie Mae denies that Plaintiff is

5  entitled to the relief requested.

6                          **SECOND CLAIM FOR RELIEF**

7                              **(Declaratory Relief)**

8      17.     Fannie Mae repeats and incorporates each of its responses to Paragraph 1 through

9  16 though as if fully stated herein.

10     18.     Answering Paragraph 18 of the Complaint, Fannie Mae admits that Plaintiff seeks

11 the referenced relief and denies that Plaintiff is entitled to the relief requested.

12     19.     Answering Paragraph 19 of the Complaint, Fannie Mae admits that Plaintiff seeks

13 the referenced relief and denies that Plaintiff is entitled to the relief requested.

14                          **AFFIRMATIVE DEFENSES**

15     1.     The Complaint, and each and every alleged cause of action contained therein, fails

16 to state a suitable and cognizable claim upon which relief may be granted.

17     2.     The foreclosure sale at issue did not extinguish the prior recorded first priority

18 deed of trust because the foreclosing entity and/or its agents failed to satisfy the requirement of

19 Nevada Revised Statute Chapter 116.

20     3.     Fannie Mae cannot be deprived of its interest in the Property in violation of the

21 Procedural Due Process Clause of the Fourteenth Amendment of the United States Constitution

22 and Article 1, Sec. 8, of the Nevada Constitution.

23     4.     Fannie Mae cannot be deprived of its interest in the Property in violation of

24 federal law.

25     5.     Plaintiff's claim of free and clear title to the Property is barred by 12 U.S.C.

26 § 4617(j)(3), which precludes a foreclosure sale of a homeowner's association assessment lien

27

28

ANSWER TO COMPLAINT AND COUNTERCLAIM

1    from extinguishing Fannie Mae's interest in the Property and preempts any state law to the

2    contrary.

3          6.     The foreclosure sale through which LNM alleges it obtained title to the Property

4    is void as to Fannie Mae due to deficiencies in notice required pursuant to N.R.S. §§ 107.090 and

5    116.31168 and LNM is not a bona fide purchaser.

6          7.     The foreclosure sale through which LNM alleges it obtained title to the Property

7    is void as to Fannie Mae as the lien that was foreclosed contained improper amounts and was,

8    thus, not authorized by statute and LNM is not a bona fide purchaser.

9          8.     The foreclosure sale through which LNM alleges it obtained title to the Property

10   is void as being held in a commercially unreasonable manner as to Fannie Mae and LNM is not a

11   bona fide purchaser.

12         9.     The foreclosure sale by which LNM alleges it obtained title to Property is void for

13   failure to comply with the statutory requirements and LNM is not a bona fide purchaser.

14        10.    Fannie Mae acted in good faith at all times.

15        11.    By its own conduct, LNM is estopped from making the claims herein.

16        12.    LNM's claims are barred by the doctrine of laches and/or unclean hands.

17        13.    LNM's claims are barred by the doctrine of equitable estoppel.

18        14.    LNM failed to comply with the statutory requirements for perfecting its alleged

19   interest in the Property, if any, and thus cannot obtain the relief requested from the Court.

20        15.    LNM waived any right that it may have had for relief from the Court.

21        16.    LNM claims are barred by the applicable statute of limitations.

22        17.    LNM would be unjustly enriched if it was to obtain title to the Property without

23   recognition of the superior interest of Fannie Mae and without payment of either the amount due

24   on the loan or the fair market value of the Property.

25        18.    LNM has, through its own acts and/or omissions, failed to mitigate its damages,

26   the existence of which are denied, and has therefore been released and discharged from any

27   liability.

ANSWER TO COMPLAINT AND COUNTERCLAIM

19.     The matters complained of in the Complaint were proximately caused, in whole or in part, by the negligence of a third party or parties, or the negligence of LNM.

20.     The matters complained of in the Complaint were proximately caused, in whole or in part, by the acts or omissions of a third party of parties, or by LNM. Accordingly, the liability of Fannie Mae and responsible parties, named or unnamed, should be apportioned and the liability, if any of Fannie Mae should be reduced accordingly.

21.     Fannie Mae owed no duty to LNM.

22.     Fannie Mae complied with all relevant Nevada and Federal statutes governing the relationship, if any, between LNM and Fannie Mae in regard to the conduct alleged in the Complaint.

23.     LNM has not stated any basis to rescind any instrument or lien in favor of Fannie Mae that encumbers the Property.

24.     Fannie Mae alleges that at this time it has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. Therefore, Fannie Mae reserves the right to assert additional affirmative defenses in the event that discovery indicates that such unstated affirmative defenses are appropriate.

**WHEREFORE**, Fannie Mae demands entry of judgment as follows:

1.     That LNM take nothing by way of its Complaint;

2.     For an award on behalf of Fannie Mae for its attorney's fees and costs incurred in responding to LNM's Complaint;

3.     For costs of suit; and

4.     For such other and further relief as the Court may deem proper and/or just.

## COUNTERCLAIMS

COMES NOW, Proposed Intervenor/Counterclaimant, FEDERAL NATIONAL MORTGAGE ASSOCIATION ("Fannie Mae"), by and through its counsel of record, LAUREL

ANSWER TO COMPLAINT AND COUNTERCLAIM

I. HANDLEY, ESQ., and KRISTA J. NIELSON, ESQ., of PITE DUNCAN, LLP, and for its causes of action against Plaintiff/Counter-Defendant, LN MANAGEMENT LLC SERIES 7937 SIERRA RIM ("LNM") and Counter-Defendant, ELKHORN COMMUNITY ASSOCIATION ("Elkhorn CA") and alleges as follows:

## PARTIES

1.      Fannie Mae is "a corporation organized and existing under the laws of the United States with its principal place of business in Washington, D.C." Fannie Mae is deemed a citizen of the District of Columbia for jurisdictional purposes in civil cases. 12 U.S.C. § 1717(a)(2)(B).

2.      Fannie Mae was established as a government sponsored enterprise to provide stability and liquidity in the secondary mortgage market.  12 U.S.C. § 1716(1), (4). Pursuant to its statutory mission, Fannie Mae owns or guarantees millions of home loans throughout the United States, many of which are associated with properties located in the State of Nevada.

3.      On September 6, 2008, the Director of Federal Housing Finance Agency ("FHFA"), authorized by the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, codified at 12 U.S.C. § 4617 *et seq.*, placed Fannie Mae into conservatorship and appointed FHFA as Conservator.

4.      Counter-Defendant, LNM, is upon information and belief a Nevada limited-liability company with its principal place of business in Nevada.

5.      Counter-Defendant, Elkhorn CA, is a Nevada non-profit corporation with its principal place of business in Clark County, Nevada.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331. because: (1) the claims asserted arise under the laws of the United States; and (2) Fannie Mae's corporate charter confers federal question jurisdiction over claims by brought Fannie Mae. *See Lightfoot v. Cendant Mortg. Corp.,* 769 F.3d 681 (9th Cir. 2014).

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) because Counter-Defendants reside in this district; a substantial part of the events or omissions

ANSWER TO COMPLAINT AND COUNTERCLAIM

giving rise to these claims occurred in this district; and the real property that is the subject of this action is situated in this district.

8. The Court has personal jurisdiction over Counter-Defendant LNM because this lawsuit arises out of and is connected with LNM's purposeful purchase of an interest in real property situated in Nevada and, upon information and belief, LNM is a Nevada limited-liability company.

9. The Court has personal jurisdiction over Elkhorn CA because this lawsuit arises out of and is connected with Elkhorn CA's foreclosure of real property located in Nevada and, upon information and belief, Elkhorn CA is a Nevada corporation.

## FACTUAL BACKGROUND

### *The Property*

10. This action centers on the parties' rights in that certain real property commonly described as 7937 Sierra Rim Drive, Las Vegas, Nevada 89131; APN 125-21-511-013 (the "Property"). The Property is legally described as follows:

> PARCEL ONE (1)
> LOT SIXTY-NINE (69) IN BLOCK ONE (1) OF MOUNTAINAIRE UNIT 2 AT ELKHORN SPRINGS AS SHOWN BY MAP THEREOF ON FILE IN BOOK 77 OF PLATS, PAGE 77 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY NEVADA.

### *Fannie Mae's Interest in the Subject Property*

11. Fannie Mae has interest in a first priority Deed of Trust ("Deed of Trust") encumbering the Property. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "1".

12. On or about June 24, 2004, Benjamin T. Pfeiffer and Sabrina S. Pfeiffer borrowed $121,000.00 from Nevada State Bank (the "Pfeiffer Loan"). As part of the loan transaction, Mr. and Mrs. Pfeiffer executed a Promissory Note, which was secured by a Deed of Trust encumbering the Property. (*See* Exhibit "1").

1    13.    The Deed of Trust was recorded on July 2, 2004, in the Official Records of Clark

2 County, Nevada as Instrument No.: 20040702-0001246. (*See* Exhibit "1"). The original

3 beneficiary under the Deed of Trust was Nevada State Bank.

4    14.    On July 2, 2004, an Assignment of Mortgage was recorded, reflecting that

5 Nevada State Bank had assigned its beneficial interest in the Deed of Trust to Mortgage

6 Electronic Registration Systems, Inc. ("MERS"). A true and correct copy of the Assignment of

7 Mortgage is attached hereto as Exhibit "2".

8    15.    Fannie Mae purchased the Pfeiffer Loan on or about October 1, 2004.

9    16.    On April 12, 2012, a Corporate Assignment of Deed of Trust was recorded,

10 reflecting that MERS had assigned its beneficial interest in the Deed of Trust to CitiMortgage,

11 Inc. ("CMI"). A true and correct copy of the Corporate Assignment of Deed of Trust is attached

12 hereto as Exhibit "3".

13    17.    CMI is the duly authorized servicer for the Pfeiffer Loan, which is owned by

14 Fannie Mae.

15 ***The HOA Sale and LNM's Acquisition of the Subject Property***

16    18.    Elkhorn CA claimed an interest in the Property pursuant to a Notice of Delinquent

17 Assessment Lien ("HOA Lien"). A true and correct copy of the HOA Lien is attached hereto as

18 Exhibit "4".

19    19.    The HOA Lien indicated the total amount due was $977.10.

20    20.    Absolute Collection Services ("ACS"), as agent for Elkhorn CA, recorded the

21 HOA Lien on November 14, 2012, in the Official Records of Clark County, Nevada as

22 Instrument No. 201211140001605. (*See* Exhibit "4").

23    21.    On or about February 1, 2013, ACS acting on behalf of Elkhorn CA, recorded a

24 Notice of Default and Election to Sell Under Homeowner's Association Lien ("Notice of

25 Default") in the Official Records of Clark County, Nevada as Instrument No.:

26 201302010002957. A true and correct copy of the HOA Notice of Default is attached hereto as

27 Exhibit "5".

28

- 9 -
ANSWER TO COMPLAINT AND COUNTERCLAIM

22.     The Notice of Default indicated the total amount due was $1,686.70 as of February 1, 2013. Fannie Mae is informed and believes that the amounts claimed in the Notice of Default improperly included "collection fees."

23.     Thereafter, ACS, acting on behalf of Elkhorn CA, recorded a Notice of Trustee's Sale in the Official Records of Clark County, Nevada as Instrument No.: 201305230003766 ("Notice of Sale"). A true and correct copy of the Notice of Sale is attached hereto as Exhibit "6".

24.     The Notice of Sale is dated May 23, 2013, and indicated the total amount due was $3,427.55.

25.     Fannie Mae is informed and believes that neither ACS nor Elkhorn CA advised Fannie Mae, its loan servicer, or its predecessors in interest that a portion of the HOA Lien may be able to attain priority over the Deed of Trust.

26.     Neither the HOA Lien nor the Notice of Default nor the Notice of Sale specified what portion of the lien, if any, may attain priority over the Deed of Trust.

27.     Neither the HOA Lien nor the Notice of Default nor the Notice of Sale specified the amount of the super-priority piece, if any, of the HOA Lien.

28.     Neither the HOA Lien nor the Notice of Default nor the Notice of Sale specified the amount required to payoff the super-priority piece, if any, of the HOA Lien.

29.     Elkhorn CA purportedly foreclosed on its HOA Lien on September 17, 2013 ("HOA Sale").  At the time of the HOA Sale, CMI was the servicer of the Pfeiffer Loan for Fannie Mae.

30.     Following the HOA Sale, a Trustee's Deed Upon Sale was recorded in the Official Records of Clark County, Nevada as Instrument No. 201309200001394 ("Foreclosure Deed"). A true and correct copy of the Foreclosure Deed is attached hereto as Exhibit "7".

31.     At no time did Plaintiff, Elkhorn CA or ACS obtain consent from FHFA to extinguish Fannie Mae's interest in the Deed of Trust and/or property.

32.     Fannie Mae is informed and believes that at the HOA Sale, LNM was purportedly the highest bidder, with a bid of $4,701.00.

33.     Fannie Mae is informed and believes that the unpaid debt due and owing to Elkhorn CA as of the date of the HOA Sale was $4,701.00 as stated in the Foreclosure Deed.

34.     The Foreclosure Deed listed the transfer tax value of the property as $92,203.00.

**FIRST CAUSE OF ACTION**

**(Quiet Title – as to LNM)**

35.     Fannie Mae repeats and re-alleges the allegations contain in paragraphs 1 through 34 above.

36.     Pursuant to 28 U.S.C. § 2201 and NRS § 40.010, this Court has the power and authority to resolve the parties adverse claims in the Property.

37.     At the time of the HOA Sale, the Deed of Trust was a first secured interest on the Property.

38.     LNM claims an interest in the Property through a Trustee's Deed Upon Sale recording in the Official Records of Clark County as Instrument No. 201309200001394 that is adverse to Fannie Mae's interest.  LNM claims that the Property was conveyed to it free and clear of the Deed of Trust.

39.     FHFA, as conservator, succeeded by law to "all rights, title, powers, and privileges" of Fannie Mae.  12 U.S.C. § 4617(b)(2)(A)(i).

40.     Pursuant to 12 U.S.C. § 4617(j)(3), "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FHFA], nor shall any involuntary lien attach to the property of [FHFA]."

41.     Fannie Mae's interest at issue is the property of the Conservator.   Therefore, applying NRS Chapter 116 or other state law in a manner that extinguishes Fannie Mae's interest in the Deed of Trust would violate 12 U.S.C. § 4617(j)(3).

42.     At no time did Elkhorn CA or its trustee obtain consent from FHFA to extinguish Fannie Mae's interest in the Property.

- 11 -

43.     Based on the adverse claims being asserted by the parties, the parties are entitled to a judicial determination regarding the rights and interests of the respective parties to the case.

44.     At the time of the HOA Sale, Fannie Mae was an interested party as defined by N.R.S. § 107.090(1), as it claims a right, title or interest in, or lien or charge upon, the Property.

45.     Fannie Mae has standing to prosecute this cause of action because the HOA Sale did cause Fannie Mae actual injury and Fannie Mae seeks redress from this Court.

46.     Fannie Mae is entitled to a determination from this Court, pursuant to 28 U.S.C. § 2201 and N.R.S. § 40.0101, that the HOA Sale, if valid, did not extinguish the Deed of Trust, which continues to encumber the Property after the HOA Sale.

47.     Fannie Mae is entitled to a determination from this Court, pursuant to 28 U.S.C. § 2201 and N.R.S. § 40.010, that Fannie Mae's interest is superior to the interest, if any, acquired by LNM through the Trustee's Deed Upon Sale.

48.     In the alternative, Fannie Mae is entitled to a determination from this Court, pursuant to 28 U.S.C. § 2201 and N.R.S. § 40.010, the HOA Sale is unlawful and void under N.R.S. § 116.3102 et seq.

49.     Fannie Mae has been required to retain counsel and is entitled to recover reasonable attorney's fees to prosecute this action.

## SECOND CAUSE OF ACTION

### (Declaratory Relief – as to all Counter-Defendants)

50.     Fannie Mae repeats and re-alleges the allegations contained in paragraphs 1 through 49 above.

51.     This Court has the power and authority to declare Fannie Mae's rights and interest in the Property and to resolve the parties' adverse claims in the Property pursuant to 28 U.S.C. § 2201 and NRS § 30.040.

52.     Fannie Mae has interest in a first priority security interest in the Property pursuant to the Deed of Trust.

ANSWER TO COMPLAINT AND COUNTERCLAIM

53.     Elkhorn CA and its agent ACS purported to conduct the HOA Sale pursuant to NRS Chapter 116. The HOA Sale purports to affect Fannie Mae's rights, status, legal relations and interest in the Property.

54.     Fannie Mae contends that its rights and interest in the Property were not affected by the HOA Sale and that Fannie Mae continues to have a first priority security interest in the Property pursuant to the Deed of Trust.

55.     A justiciable controversy exists between Fannie Mae and Counter-Defendants and Fannie Mae has a legally protectable interest in the controversy. The issue is ripe for judicial determination.

56.     Fannie Mae is entitled to a declaration from this Court that 12 U.S.C. § 4617(j)(3) precludes the HOA Sale from extinguishing Fannie Mae's interest in the Property and that Fannie Mae's interest in the Property is superior to the interest, if any, acquired by LNM through the HOA Sale or held or claimed by any other party.

57.     In the alternative, Fannie Mae is entitled to a determination from this Court that the HOA Sale was not a valid sale and conveyed no legitimate interest to LNM.

58.     Fannie Mae has been required to retain counsel to prosecute this action and is entitled to recover reasonable attorney's fees to prosecute this action.

## PRAYER FOR RELIEF

WHEREFORE, Proposed Intervenor/Counterclaimant prays for judgment against counter-defendants as follows:

1.  For a judgment quieting title and declaring that under 12 U.S.C. § 4617(j)(3), the Deed of Trust continues to encumber the Property after the HOA Sale;

2.  For a declaration that the HOA Sale did not extinguish Fannie Mae's interest in the Deed of Trust and thus did not convey the Property free and clear to LNM;

3.  For a declaration and determination that Fannie Mae's interest is superior to the interest of LNM and all other parties;

- 13 -

4. For a declaration that 12 U.S.C. § 4617(j)(3) preempts any Nevada law that would permit a foreclosure on a super-priority lien to extinguish Fannie Mae's interest while it is under FHFA's conservatorship;

5. In the alternative, for a declaration and determination that the HOA Sale was invalid and conveyed no legitimate interest to LNM;

6. If it is determined that the Deed of Trust was extinguished by the HOA Sale, for special damages in the amount equal to the fair market value of the Property or the unpaid balance of the Loan, plus interest, at the time of the HOA Sale, whichever is greater;

7. For general and special damages;

8. For costs incurred herein, including post-judgment costs;

9. For attorney's fees and

10. For any and all further relief deemed appropriate by the Court.

DATED this 1st day of May, 2015.

PITE DUNCAN, LLP


___/s/Krista J. Nielson_____
LAUREL I. HANDLEY
KRISTA J. NIELSON
Attorneys for Proposed Intervenor/Counterclaimant
FEDERAL NATIONAL MORTGAGE
ASSOCIATION.

# EXHIBIT 1

# EXHIBIT 1

Assessor's Parcel Number: 125-21-511-013
When recorded mail to:
**Nevada State Bank**
**4170 South Maryland Parkway**
**LAS VEGAS, NEVADA 89119**
Mail Tax Statements to:
**BENJAMIN T. PFEIFFER**
**7937 SIERRA RIM DRIVE**
**LAS VEGAS, NEVADA 89131**
Prepared By:

~~Recording Requested By:~~

20040702-0001246
Fee  $34.00
07/02/2004 09:03:18    T20040046818
Req  NEVADA TITLE COMPANY
Frances Deane            Pgs: 21
Clark County Recorder

[Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated June 24, 2004, together with all Riders to this document.
**(B) "Borrower"** is **BENJAMIN T. PFEIFFER and SABRINA S. PFEIFFER husband and wife as joint tenants.** Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **Nevada State Bank, a NEVADA Corporation.** Lender is a corporation organized and existing under the laws of the State of NEVADA. Lender's address is **4170 South Maryland Parkway, LAS VEGAS, NEVADA 89119.** Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is ~~FIRST CENTENNIAL TITLE~~ Rebecca W. Shaia, of the City of *
**(E) "Note"** means the promissory note signed by Borrower and dated June 24, 2004. The Note states that Borrower owes Lender **One Hundred Twenty One Thousand And 00/100** Dollars (U.S. $ **121,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **July 1, 2034.**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."                                        * Richmond, Virginia

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3029** 1/01
Page 1 of 17

BTP                    Initials: _____

nvctd

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [ ]  Adjustable Rate Rider | [ ]  Condominium Rider | [ ]  Second Home Rider |
| [ ]  Balloon Rider | [X]  Planned Unit Development Rider | [ ]  1-4 Family Rider |
| [ ]  VA Rider | [ ]  Biweekly Payment Rider | [ ]  Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01**
Page 2 of 17

Initials:

this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of CLARK [Name of Recording Jurisdiction]:

**SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.**

Parcel ID Number: **125-21-511-013**

which currently has the address of
[Street]

**7937 SIERRA RIM DRIVE**
**LAS VEGAS** [City], Nevada **89131** [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01**
Page 3 of 17

Initials: _____

whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3029 1/01
Page 4 of 17

ESP  Initials: _____

Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029   1/01
Page 5 of 17

BAP        Initials: _____

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

**NEVADA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT   Form 3029  1/01**

Page 6 of 17

BTP   Initials: _____

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029  1/01**
Page 7 of 17

BTP  Initials: _____

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3029 1/01
Page 8 of 17

BTP   Initials: _____

separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01

Page 9 of 17

BTP    Initials: _____

lessened.   During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.   Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.   Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.   If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.   Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.   Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.   "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.   Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.   The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029  1/01**
Page 10 of 17

BP   Initials: _____

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3029  1/01**
Page 11 of 17

BTP    Initials: _____

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3029 1/01
Page 12 of 17

BTP   Initials: _____

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**NEVADA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**   Form 3029  1/01

Page 13 of 17

BTP   Initials: _____ _____

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3029  1/01
Page 14 of 17

BTP   Initials: _____

Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 900.00.

NEVADA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**   Form 3029  1/01
Page 15 of 17

BTP   Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses:

_____          _____ (Seal)
                                   BENJAMIN T. PFEIFFER      -Borrower

_____          _____ (Seal)
                                   SABRINA S. PFEIFFER       -Borrower

_____          _____ (Seal)
                                                             -Borrower

_____          _____ (Seal)
                                                             -Borrower

**NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3029  1/01**
Page 16 of 17

STATE OF NEVADA,
COUNTY OF _____ Clark _____

This instrument was acknowledged before me on ___ 24 June 2004 ___ by
**BENJAMIN T. PFEIFFER and SABRINA S. PFEIFFER**

L. FORBES
Notary Public State of Nevada
No. 01-71177-1
My appt. exp. Nov. 5, 2005

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029  1/01**
Page 17 of 17                                          Initials: _____

Escrow No 

# EXHIBIT "A"

## LEGAL DESCRIPTION

PARCEL ONE (1)

LOT SIXTY-NINE (69) IN BLOCK ONE (1) OF MOUNTAINAIRE UNIT 2 AT
ELKHORN SPRINGS AS SHOWN BY MAP THEREOF ON FILE IN BOOK 77 OF
PLATS, PAGE 77 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK
COUNTY, NEVADA

RESERVING THEREFROM A NON-EXCLUSIVE EASEMENT FOR USE AND
ENJOYMENT IN AND TO THE ASSOCIATION PROPERTY AS SET FORTH IN
THE MASTER DECLARATION OF COVENANTS, CONDITIONS,
RESTRICTIONS AND RESERVATION OF EASEMENTS FOR ELKHORN
RECORDED MARCH 22, 1995 IN BOOK 950322 AS DOCUMENT NO. 00346 AS
THE SAME MAY BE AMENDED AND OR SUPPLEMENTED, ALL IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL TWO (2)

A NON-EXCLUSIVE EASEMENT FOR USE AND ENJOYMENT IN AND TO THE
ASSOCIATION PROPERTY WHICH EASEMENT IS APPURTENANT TO
PARCEL ONE (1)

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **24th** day of **June, 2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Nevada State Bank, a NEVADA Corporation** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**7937 SIERRA RIM DRIVE, LAS VEGAS, NEVADA  89131**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Covenants, Conditions and Restrictions of the **COVENANTS, CONDITIONS AND RESTRICTIONS**
(the "Declaration"). The Property is a part of a planned unit development known as

**MOUNTAINAIRE UNIT 2**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3150 1/01**
Page 1 of 3

BTP     Initials: _____

usc3150

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property, and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt

Page 2 of 3

Form 3150 1/01

BP   Initials: ____

of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
BENJAMIN T. PFEIFFER          -Borrower

_____ (Seal)
SABRINA S. PFEIFFER          -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Page 3 of 3

Form 3150 1/81

# EXHIBIT 2

# EXHIBIT 2



20040702-0001247
Fee  $16 00
07/12/2004 09 00 18    T203400488 8
Req  NEVADA TITLE COMPANY
Frances Deane
Clark County Recorder   Pgs  3



When Recorded, Mail to:
**Nevada State Bank**
**4170 South Maryland Parkway**
**LAS VEGAS, NEVADA 89119**
Attn.: **SHIPPING DEPT./DOC. CONTROL**
Loan No.: ▮▮▮▮▮▮

**Order No.:** ▮▮▮▮▮▮▮▮

APN # 125-21-511-013

## ASSIGNMENT OF DEED OF TRUST

     **FOR VALUABLE CONSIDERATION,** the receipt of which is hereby acknowledged, **Nevada State Bank** , hereby assigns and transfers to **Mortgage Electronic Registration Systems, Inc., its successors and assigns,** whose address is **P.O. BOX 2026, FLINT, MICHIGAN 48501-2026,** all its right, title and interest in and to a certain Deed of Trust, together with the indebtedness secured thereby, which Deed of Trust is dated **June 24, 2004,** was executed by **BENJAMIN T. PFEIFFER and SABRINA S. PFEIFFER husband and wife as joint tenants as** Trustor, to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as Trustee, was recorded on  concurrently  , in Book  ,          at Page _____, Entry Number _____, situated in said county described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.**

  **\*\* Rebecca W. Shaia, of the City of Richmond, Virginia**

MIN: _____      MERS Phone: 1-888-679-6377

Page 1 of 2

merassnt

Dated    June 24, 2004        .

                                          Nevada State Bank
                                          By _____
                                          Its  Loan Processor/Closer Officer

STATE OF      Nevada              }
                                  } ss
COUNTY OF   Clark                 }

        On  June 24, 2005   . personally appeared before me  Sally Lanzalaco        who
being by me duly sworn, did say that she_ is the  Loan Processor/Closer Officer        , of
Nevada State Bank, and that the foregoing instrument was signed in behalf of said corporation by authority of a
resolution of its Board of Directors, and said  acknowledged to me that said corporation executed the same.

                                          _____
                                          Notary Public

My Commission Expires.  August 24, 2005

            Residing at:  Clark County

Address of Preparer.

Nevada State Bank
4170 South Maryland Parkway
LAS VEGAS, NEVADA  89119

JAMIE L. MERKER
Notary Public State of Nevada
No. 96-0184-1
My appt. exp. Aug. 24, 2005

MIN: _____           MERS Phone:  1-888-679-6377
                                   Page 2 of 2

Escrow No.: 

## EXHIBIT "A"

### LEGAL DESCRIPTION

PARCEL ONE (1)

LOT SIXTY-NINE (69) IN BLOCK ONE (1) OF MOUNTAINAIRE UNIT 2 AT
ELKHORN SPRINGS AS SHOWN BY MAP THEREOF ON FILE IN BOOK 77 OF
PLATS, PAGE 77 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK
COUNTY, NEVADA.

RESERVING THEREFROM A NON-EXCLUSIVE EASEMENT FOR USE AND
ENJOYMENT IN AND TO THE ASSOCIATION PROPERTY AS SET FORTH IN
THE MASTER DECLARATION OF COVENANTS, CONDITIONS,
RESTRICTIONS AND RESERVATION OF EASEMENTS FOR ELKHORN
RECORDED MARCH 22, 1995 IN BOOK 950322 AS DOCUMENT NO. 00346 AS
THE SAME MAY BE AMENDED AND OR SUPPLEMENTED, ALL IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL TWO (2)

A NON-EXCLUSIVE EASEMENT FOR USE AND ENJOYMENT IN AND TO THE
ASSOCIATION PROPERTY WHICH EASEMENT IS APPURTENANT TO
PARCEL ONE (1).

# EXHIBIT 3

# EXHIBIT 3

Inst #: 201204120002299
Fees: $18.00
N/C Fee: $0.00
04/12/2012 02:55:37 PM
Receipt #: 1128530
Requestor:
NATIONWIDE TITLE CLEARING
Recorded By: MAT   Pgs: 2
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

I hereby affirm that this document submitted for recording does not contain a social security number.

Signed: _____
     DERRICK WHITE
     ASST. SECRETARY

**Parcel #: 125-21-511-013**

When Recorded Mail To:
**CitiMortgage, Inc.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683
Investor L#**

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS'), (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, sell, assign, transfer and set over the described DEED OF TRUST with all interest secured thereby, all liens, and any rights due or to become due thereon to **CITIMORTGAGE, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368-2240 (800)283-7918, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)**.

Said DEED OF TRUST made by: **BENJAMIN T. PFEIFFER AND SABRINA S. PFEIFFER** and recorded on 07/02/2004 as Instrument # 0001246, and/or Book 20040702, Page , in the Recorder's office of CLARK, Nevada.

Date: 04/ 04 /2012 (MM/DD/YYYY)

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS').**

By: _____
     **DERRICK WHITE
     ASST. SECRETARY**

FORM5\FRMNV1



Parcel #: 125-21-511-013
Investor L#

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on 04/_04_/2012 (MM/DD/YYYY), by DERRICK WHITE as ASST. SECRETARY for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS'), who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Signed: _Elizabeth A. Mustard_



ELIZABETH A. MUSTARD
Notary Public - State of FLORIDA
Commission expires: 08/27/2015

ELIZABETH A. MUSTARD
MY COMMISSION # EE 088429
EXPIRES: August 27, 2015
Bonded Thru Notary Public Underwriters

Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Mail Tax Statements to:  BENJAMIN T PFEIFFER
                         7937 SIERRA RIM DR
                         LAS VEGAS, NV 89131

CIMAV ▮▮▮▮▮ -@ MERS (MOM)▮▮▮▮▮ MIN▮▮▮▮▮▮▮▮ MERS PHONE
1-888-679-MERS  FORM5\FRMNV1

# EXHIBIT 4

# EXHIBIT 4

Inst #: 201211140001605
Fees: $18.00
N/C Fee: $0.00
11/14/2012 12:17:35 PM
Receipt #: 1381738
Requestor:
ABSOLUTE COLLECTION SERVICE
Recorded By: ANI  Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

Return to:
Attn:  Kelly Mitchell
Absolute Collection Services, LLC
6440 Sky Pointe Dr., Ste 140-154
Las Vegas, NV 89131
(702) 531-3394 phone
www.absolute-collection.com

APN # 125-21-511-013

## Notice of Delinquent Assessment Lien

**This NOTICE OF DELINQUENT ASSESSMENT** is being given pursuant to N.R.S. 117.70 et seq. or N.R.S. 116.3115 et. Seq. and N.R.S. 116.3116 through 116.31168 et. Seq. and the provisions of the Declaration of Covenants, Conditions and Restrictions (CC&Rs) of the Homeowners Association as follows:

Association Claimant: **Elkhorn CA** Declarations of CC&R's 6/1/01 Instrument No: 03260, Book No.: 20010601 Page No: __ County of CLARK, and any and all amendments or annexations of record there to.

The description of the common interest development unit against which this notice is being recorded is as follows: Legal Unit No.: 7937 Sierra Rim Dr., Mountainaire Unit 2 at Elkhorn Springs Plat Book 77 Page 77 Lot 69 Block 1

The reputed owner is:        Benjamin & Sabrina Pfeiffer

Common address: 7937 Sierra Rim Dr., Las Vegas NV 89131

Owner's mailing address: PO Box 751912, Las Vegas NV 89136

### DELINQUENCY #A4151

| Total Amount due as of 11/14/12 | $ 977.10 |
|---|---|

Additional monies shall accrue under this claim at the rate of the
claimant's periodic assessments, plus permissible late charges,
costs of collection and interest and other charges, if any, that shall
accrue subsequent to the date of this notice.

The acting agency for enforcement on this lien is:

ABSOLUTE COLLECTION SERVICES, LLC
6440 Sky Pointe Dr., Ste 140-154
Las Vegas, NV 89131
(702) 531-3394
www.absolute-collection.com
customerservice@absolute-collection.com

DATED:        11/14/12

RICHARD KAYE, Trustee Sale Officer

STATE OF NEVADA
COUNTY OF CLARK

On November 14, 2012 before me, the undersigned, a Notary
Public in and for said county, personally appeared, Renisha
Anderson personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is
subscribed to the within Instrument and acknowledged to me that
he/she executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted,
executed the Instrument.

WITNESS my hand and official seal.

KELLY MITCHELL, Notary Public
My Commission Expires: 7/10/16
Certification No: 08-7504-1

KELLY MITCHELL
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 7-10-2016
Certificate No: 08-7504-1

# EXHIBIT 5

# EXHIBIT 5

Inst #: 201302010002957
Fees: $19.00
N/C Fee: $0.00
02/01/2013 01:10:57 PM
Receipt #: 1482630
Requestor:
ABSOLUTE COLLECTION SERVICE
Recorded By: SUO   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER

Return to:
Attn: Kelly Mitchell
Absolute Collections Services, LLC
Mailing address only:
6440 Sky Pointe Dr., Ste 140-154
Las Vegas, NV 89131
(702) 531-3394

APN # 125-21-511-013
TS NO: A4151

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER HOMEOWNERS ASSOCIATION LIEN

**WARNING! IF YOU FAIL TO PAY THE AMOUNT SPECIFIED IN THIS NOTICE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE!** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account. No sale date may be set until ninety (90) days from the date this notice of default may be recorded or mailed. The amount is **$1,686.70 as of February 1, 2013** and will increase until your account becomes current. Upon your written request, **Elkhorn Community Association** you a written itemization of the entire amount you must pay. You and the Association may mutually agree in writing prior to the time the notice of sale is posted to, amount other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2). Following the expiration of the time period previously referred to, unless a separate written agreement between you and the Association permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by the Association.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, contact the following trustee who has been authorized by the Association to enforce its lien by sale: Absolute Collection Services, LLC, 6440 Sky Pointe Dr., Ste 140-154, Las Vegas, NV 89131

THIS NOTICE is given pursuant to NRS 117.070 et. Seq. or NRS 116.3115 et. Seq. and NRS 116.3116 through 116.31168 et. Seq., and pursuant to that certain Notice of Delinquent Assessment Lien, recorded on **11/14/12** Document no. **0001605** book **20121114** of Official Records in the office of the Recorder of Clark County, State of Nevada.

Owner: **Benjamin T. & Sabrina S. Pfeiffer**
Property: **7937 Sierra Rim Drive Las Vegas, NV 89131**

Legal Description-shown on the Subdivision map recorded in Book No. **77** Page(s) **77**, Lot **69**, Block **1** Inclusive, of Maps of the County of Clark, State of Nevada.

If you have any questions, you should contact a lawyer. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION

NOTICE IS HEREBY GIVEN THAT: Absolute Collection Services, LLC, is the duly appointed Trustee/Agent authorized by the Association, pursuant to the terms contained **06/01/01** as document number **03260-20010601** of Official Records in the Office of the Recorder of Clark County, Nevada, and any and all amendments or annexations of record thereto, describing the land therein. That the beneficial Interest under said Notice of Delinquent Assessment is presently held by the Association. That a breach of, and default in, the obligation for which said Covenants, Conditions and Restrictions as security has occurred in that the payment(s) have not been made of:

Periodic assessments, less credits and offsets, plus any late charges, interest, fees, charges, collection costs, trustee's fees, and attorney fees, if any.

That by reason thereof, the present Association under such Covenants, Conditions and Restrictions, has executed and delivered to said Trustee, a

written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Covenants, Conditions and Restrictions and

all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the herein described property, liened by said Association, to be sold to satisfy the obligations secured thereby.

PLEASE NOTE THAT WE ARE A DEBT COLLECTOR.

Date:  February 1, 2013

Absolute Collection Services, LLC as Trustee

*Renisha Anderson*

Renisha Anderson, Recording Officer

STATE OF NEVADA
COUNTY OF CLARK

On February 1, 2013 before me, the undersigned, a Notary Public in and for said county, personally appeared, Renisha Anderson personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is subscribed to the within Instrument and acknowledged to me that he/she executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the Instrument.

WITNESS my hand and official seal.

*Kelly Mitchell*

Kelly Mitchell, Notary Public
My Commission Expires: 7/10/16
Certificate No. 08-7504-1

KELLY MITCHELL
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 7-10-2016
Certificate No: 08-7504-1

# EXHIBIT 6

# EXHIBIT 6

Inst #: 201305230003766
Fees: $18.00
N/C Fee: $0.00
05/23/2013 12:01:52 PM
Receipt #: 1627075
Requestor:
ABSOLUTE COLLECTION SERVICE
Recorded By: MAT   Pgs: 2

**DEBBIE CONWAY**
CLARK COUNTY RECORDER

Return to:
Attn: Kelly Mitchell
Absolute Collections Services, LLC
Mailing address only:
6440 Sky Pointe Dr., Ste 140-154
Las Vegas, NV 89131
(702) 531-3394

APN 125-21-511-013
TS NO: A4151
Title Order No: 13980101
HOA: Elkhorn CA

## NOTICE OF TRUSTEE'S SALE

**WARNING! A SALE OF YOUR PROPERTY IS IMMINENT! UNLESS YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE SALE DATE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE. YOU MUST ACT BEFORE THE SALE DATE. IF YOU HAVE ANY QUESTIONS, PLEASE CALL ABSOLUTE COLLECTION SERVICES, LLC AT 702-531-3394. IF YOU NEED ASSISTANCE, PLEASE CALL THE FORECLOSURE SECTION OF THE OMBUDSMAN'S OFFICE, NEVADA REAL ESTATE DIVISION AT 877-829-9907 OR 702-486-4480 IMMEDIATELY.**

You are in default under a Notice of Delinquent Assessment LIEN, dated NOVEMBER 14, 2012. Unless you take action to protect your property, it may be sold at public sale. If you need an explanation of the nature of the proceedings against you, you should contact a lawyer.

NOTICE IS HEREBY GIVEN THAT: On JULY 16, 2013 at 4:00 PM, at 1840 E Sahara Ave, Ste 112, Las Vegas, NV 89104 a public auction will be conducted, under the power of sale pursuant to the terms of those certain covenants conditions and restrictions recorded on 6/1/01 as instrument number 03260 Book 20010601 of official records of Clark County, as the duly appointed agent and pursuant to Notice of Delinquent Assessment LIEN, recorded on 11/14/12 as Document No. 0001605 in Book 20121114 of Official Records in the Office of the Recorder of Clark County, Nevada, **WILL SALE AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH,** (payable at time of sale in lawful money of the United States) all right, title and interest in the following commonly known property as:

Address: 7937 SIERRA RIM DR
City, State, Zip: LAS VEGAS NV 89131

The owner(s) of said property as of the date of the recording of said lien is purported to be:

BENJAMIN & SABRINA PFEIFFER

The undersigned agent disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum due under said Notice of Delinquent Assessment Lien, with interest thereon, as provided in said notice, advances, if any, estimated fees, charges, and expenses of the Trustee, to-wit:

$ 3,427.55 Estimated Accrued interest and additional advances, if any, will increase this figure prior to sale.

The Notice of Default and Election to Sell the described property was recorded on FEBRUARY 1, 2013 as instrument 0002957 Book 20130201 in the official records of Clark County.

PLEASE NOTE THAT WE ARE A DEBT COLLECTOR

Absolute Collections Services, LLC
www.absolute-collection.com

Date: 5/23/13

_____
Richard Kaye, Trustee Sales Officer

STATE OF NEVADA
COUNTY OF CLARK

On 5/23/13 before me, the undersigned, a Notary Public in and for said county, personally appeared, Richard Kaye personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is subscribed to the within Instrument and acknowledged to me that he/she executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the Instrument.

WITNESS my hand and official seal.

_____
Kelly Mitchell, Notary Public
My Commission Expires: 7/10/16
Certificate No. 08-7504-1

KELLY MITCHELL
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 7-10-2016
Certificate No: 08-7504-1

# EXHIBIT 7

# EXHIBIT 7

Inst #: 201309200001394
Fees: $19.00 N/C Fee: $0.00
RPTT: $471.75 Ex: #
09/20/2013 10:29:18 AM
Receipt #: 1779238
Requestor:
ABSOLUTE COLLECTION SERVICE
Recorded By: SOL   Pgs: 4
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

APN: 125-21-511-013

WHEN RECORDED MAIL DEED AND
TAX STATEMENTS TO:

LN Management LLC
Series 7937 Sierra Rim
PO Box 36208
Las Vegas, NV 89133

Title No.   A4151
Account NO. 72658
TS No. 45010-13-39697G1-01

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**TRUSTEE'S DEED UPON SALE**

The undersigned declares:

| | | |
|---|---|---|
| 1) | The grantee herein **WAS NOT** the foreclosing beneficiary | |
| 2) | The amount of the unpaid debt together with costs was | $  4,701.00 |
| 3) | The amount paid by the grantee at the trustee sale was | $  4,701.00 |
| 4) | The documentary transfer tax is | $    471.75 |
| 5) | City Judicial District of **LAS VEGAS** | |

And **Absolute Collection Services, LLC.**, as the duly appointed Trustee under the Notice of Delinquent Assessment hereinafter described, does hereby GRANT and CONVEY, but without warranty, express or implied, to: **LN Management LLC, Series 7937 Sierra Rim, PO Box 36208, Las Vegas, NV 89133**

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of CLARK, State of NEVADA, described as follows:

**7937 Sierra Rim Dr., Las Vegas, NV 89131**

Legal Description-shown on the Subdivision map recorded in Book No. **77** Page(s) **77**, Lot **69**, Block **1** Inclusive, of Maps of the Country of Clark, State of Nevada; See Exhibit A Attached

AGENT STATES THAT:
This conveyance is made pursuant to the powers granted to **Elkhorn CA** and conferred upon appointed trustee by the provisions of the Nevada Revised Statutes, the **Elkhorn**

CA documents (CC&R's) recorded as instrument number **03260** Book **20010601** on **JUNE 1, 2001** and that certain Notice of Delinquent Assessment Lien recorded on **NOVEMBER 14, 2012** instrument number **0001605** Book **20121114** Official Records of CLARK County; and pursuant to NRS 117.070 et Seq. or NRS 116.3115 et Seq and NRS 1163116 through 116.31168 et Seq. The name of the owner(s) of the property (trustor) was: **BENJAMIN & SABRINA PFEIFFER**

Default occurred as set forth in a Notice of Default and Election to Sell, recorded on **FEBRUARY 1, 2013** as instrument **0002957** Book **20130201** which was recorded in the office of the recorder of said county. Absolute Collection Services, LLC. Has complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment and Notice of Default and the posting and publication of the Notice of Sale. Said property was sold by said agent, on behalf of **Elkhorn CA** at public auction on **SEPTEMBER 17, 2013** at the place indicated on the Notice of Sale. Grantee being the highest bidder at such sale, became the purchaser of said property and paid therefore to said agent the amount bid **$4,701.00** in lawful money of the United States, or by satisfaction, pro tanto, of the obligations then secured by the Delinquent Assessment Lien.

Dated:         September 19, 2013

_____
By Richard Kaye on behalf of Absolute Collection Services


STATE OF NEVADA          )
COUNTY OF CLARK          )

On 9/19/13 before me, Kelly Mitchell, personally appeared Richard Kaye personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same in his/her authorized capacity, and that by signing his/her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and seal.

_____
Kelly Mitchell, Notary Public
My Commission Expires: 7/10/16
Certificate No. 08-7504-1

KELLY MITCHELL
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 7-10-2016
Certificate No: 08-7504-1

Order No.:  45010-13-39697G1
Guarantee No.:  45010-13-39697G1-01

## EXHIBIT "A"

PARCEL ONE (1):

Lot Sixty-Nine (69) in Block One (1) of MOUNTAINAIRE UNIT 2 AT ELKHORN SPRINGS, as shown by map thereof on file in Book 77 of Plats, Page 77, in the Office of the County Recorder of Clark County, Nevada.

RESERVING THEREFROM a non-exclusive easement for use and enjoyment in and to the Association Property as set forth in the Master Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for ELKHORN recorded March 22, 1995 in Book 950322 as Document No. 00346 as the same may be amended and/or supplemented, all in the Office of the County Recorder of Clark County, Nevada.

PARCEL TWO (2):

A non-exclusive easement for use and enjoyment in and to the Association Property which easement is appurtenant to Parcel One (1).

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. 125-21-511-013
   b. _____
   c. _____
   d. _____

2. Type of Property:
   a. ☐ Vacant Land      b. ☑ Single Fam. Res.
   c. ☐ Condo/Twnhse     d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg        f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural     h. ☐ Mobile Home
      ☐ Other

| FOR RECORDERS OPTIONAL USE ONLY |
| --- |
| Book_____ Page:_____ |
| Date of Recording: _____ |
| Notes: |

3.a. Total Value/Sales Price of Property          $ 4,701.00
   b. Deed in Lieu of Foreclosure Only (value of property (                    )
   c. Transfer Tax Value:                          $ 92,203.00
   d. Real Property Transfer Tax Due               $ 471.75

**4. If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section_____
   b. Explain Reason for Exemption: _____
      _____

5. Partial Interest: Percentage being transferred: _____ %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _Kelly Mitchell_          Capacity: Grantor

Signature _____          Capacity: _____

| **SELLER (GRANTOR) INFORMATION** <br> **(REQUIRED)** | **BUYER (GRANTEE) INFORMATION** <br> **(REQUIRED)** |
| --- | --- |
| Print Name: Absolute Collection Services  LLC | Print Name: LN Management LLC-Series 7937 Sierra Rim |
| Address: 6440 Sky Pointe Dr 140-154 | Address: PO Box 36208 |
| City: Las Vegas | City: Las Vegas |
| State: NV          Zip: 89131 | State: NV          Zip: 89133 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**

| Print Name: | Escrow # |
| --- | --- |
| Address: | |
| City: | State:          Zip: |

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

# EXHIBIT B

# EXHIBIT B

Leslie Bryan Hart, Esq. (SBN 4932)
John D. Tennert, Esq. (SBN 11728)
FENNEMORE CRAIG JONES VARGAS
300 S. Second St., Suite 1510
Reno, Nevada 89501
Tel: 775-788-2228 Fax: 775-788-2229
*lhart@fclaw.com; jtennert@fclaw.com*

Asim Varma, Esq.*
*Asim.Varma@aporter.com*
Howard N. Cayne, Esq.*
*Howard.Cayne@aporter.com*
Michael A.F. Johnson, Esq.*
*Michael.Johnson@aporter.com*
ARNOLD & PORTER LLP
555 12th Street NW
Washington, DC 20004
Tel: (202) 942-5000   Fax: (202) 942-5999
* *Pro Hac Vice* Petitions to be Submitted

*Attorneys for Proposed Intervenor*
*Federal Housing Finance Agency*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LN MANAGEMENT LLC SERIES 7937 SIERRA RIM,<br><br>        Plaintiff,<br><br>    v.<br><br>BENJAMIN T. PFEIFFER, an individual; SABRINA S. PFEIFFER, and individual: CITIMORTGAGE, INC.: and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO.:  2:13-cv-01934-JCM-PAL<br><br>**ANSWER AND COUNTERCLAIMS BY PROPOSED INTERVENOR THE FEDERAL HOUSING FINANCE AGENCY AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION** |

Simultaneously with this Answer, the Federal Housing Finance Agency ("FHFA"), in its capacity as Conservator for the Federal National Mortgage Association ("Fannie Mae"), is filing jointly with other parties in this action a stipulation permitting FHFA to intervene pursuant to Federal Rule of Civil Procedure 24.  In accordance with Rule 24(c)'s requirement that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought,"  FHFA submits this Answer to respond as follows to the Complaint filed by Plaintiff LN Management LLC Series 7937 Sierra RIM ("LN Management" or "Plaintiff"):

1

**PARTIES, JURISDICTION, AND VENUE**

1.      FHFA admits the allegations within Paragraph 1 of the Complaint.

2.      FHFA is without knowledge or information sufficient to form a belief as to the truth of the allegations within Paragraph 2 of the Complaint.

3.      FHFA admits that Benjamin T. Pfeiffer was a trustor under a Deed of Trust recorded in the Official Records of Clark County, Nevada as Instrument No.: 20040702-0001246, encumbering the real property located at 7937 Sierra Rim Drive, Las Vegas, Nevada 89131 ("Property"). FHFA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations within Paragraph 3 of the Complaint.

4.      FHFA admits that Sabrina S. Pfeiffer was a trustor under a Deed of Trust recorded in the Official Records of Clark County, Nevada as Instrument No.: 20040702-0001246, encumbering the Property. FHFA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations within Paragraph 4 of the Complaint.

5.      FHFA admits that CitiMortgage, Inc., is the successor beneficiary of a Deed of Trust recorded on July 2, 2004, in the Official Records of Clark County, Nevada as Instrument No.: 20040702-0001246 and that Fannie Mae is the owner of the corresponding loan. FHFA also admits that Nevada State Bank was the original lender and beneficiary under the Deed of Trust. FHFA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations within Paragraph 5 of the Complaint.

6.      FHFA is without knowledge or information sufficient to form a belief as to the truth of the allegations within Paragraph 6 of the Complaint.

**GENERAL ALLEGATIONS**

7.      FHFA admits that a Trustee's Deed Upon Sale was recorded on September 20, 2013, in the Official Records of Clark County, Nevada as Instrument No. 201309200001394. FHFA further admits that the Trustee's Deed Upon Sale states that Absolute Collection Services, LLC ("ACS"), "grant[s] and convey[s], but without warranty expressed or implied to: LN Management LLC, Series 7937 Sierra Rim, PO Box 36208, Las Vegas, NV 89133 (herein called

Grantee), all its right, title and interest in that certain property situated in County of Clark, State of Nevada, described as follows: 7937 Sierra Rim Dr., Las Vegas, NV 89131…" Paragraph 7 also states legal conclusions that does not require a response. To the extent a response is required, denied.

8.    FHFA admits that a Trustee's Deed Upon Sale was recorded on September 20, 2013, in the Official Records of Clark County, Nevada as Instrument No. 201309200001394. Fannie Mae further admits that the Trustee's Deed Upon Sale states that ACS, "grant[s] and convey[s], but without warranty expressed or implied to: LN Management LLC, Series 7937 Sierra Rim, PO Box 36208, Las Vegas, NV 89133 (herein called Grantee), all its right, title and interest in that certain property situated in County of Clark, State of Nevada, described as follows: 7937 Sierra Rim Dr., Las Vegas, NV 89131…" FHFA avers that this Trustee's Deed Upon Sale speaks for itself and denies any allegations that do not accurately reflect its text.

9.    FHFA admits that FHFA and Fannie Mae had, and continue to have, an interest in the Property.

10.    FHFA denies the allegations within Paragraph 10 of the Complaint.

11.    FHFA is without knowledge or information sufficient to form a belief as to the truth of the allegations within Paragraph 11 of the Complaint.

### FIRST CLAIM FOR RELIEF
(Quiet Title)

12.    FHFA repeats its responses to Paragraphs 1-11 as if fully stated herein.

13.    FHFA denies the allegations within Paragraph 13 of the Complaint.

14.    FHFA denies the allegations within Paragraph 14 of the Complaint.

15.    Paragraph 15 states Plaintiff's claim for relief that does not require a response. To the extent a response is required, denied.

16.    Paragraph 16 states Plaintiff's claim for relief that does not require a response. To the extent a response is required, denied.

**SECOND CLAIM FOR RELIEF**
**(Declaratory Relief)**

17.    FHFA repeats its responses to Paragraphs 1-16 as if fully stated herein.

18.    Paragraph 18 states Plaintiff's claim for relief that does not require a response. To the extent a response is required, denied.

19.    Paragraph 19 states Plaintiff's claim for relief that does not require a response. To the extent a response is required, denied.

**AFFIRMATIVE DEFENSES**

FHFA's investigation of these claims is continuing.  By this Answer, FHFA waives no affirmative defenses and reserves its right to amend the Answer to insert any subsequently discovered affirmative defenses.

**FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim for which relief can be granted because, among other reasons, Plaintiff's claim of free and clear title to the Property is barred by 12 U.S.C. § 4617(j)(3), which precludes a homeowners' association sale from extinguishing Fannie Mae's interest in the Property and preempts any state law to the contrary.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred by the doctrines of laches, estoppel, waiver, unjust enrichment, and/or unclean hands.

**THIRD AFFIRMATIVE DEFENSE**

The damages, if any, that were allegedly sustained by Plaintiff as a result of the acts described in the Complaint were caused in whole or were contributed to in part by reason of the acts, omissions, negligence, and/or intentional misconduct of Plaintiff.

**FOURTH AFFIRMATIVE DEFENSE**

The damages, if any, that were allegedly sustained by Plaintiff as a result of the acts described in the Complaint were caused in whole or were contributed to in part by reason of the

4

acts, omissions, negligence, and/or intentional misconduct of one or more third parties over whom neither FHFA nor Fannie Mae had control.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff has an adequate remedy at law and has, through its own acts and/or omissions, failed to mitigate its damages, the existence of which are denied.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff failed to join one or more indispensable parties.

### SEVENTH AFFIRMATIVE DEFENSE

Fannie Mae breached no duty with regard to Plaintiff.

### COUNTERCLAIMS

### FIRST COUNTERCLAIM

(Declaratory Judgment versus Plaintiff and Elkhorn Community Association)

1.      FHFA incorporates by reference the responses of all previous paragraphs, as if fully set forth herein.

2.      Pursuant to 28 U.S.C. § 2201 and NRS § 40.010, this Court has the power and authority to declare FHFA and Fannie Mae's rights and interests in the Property.

3.      FHFA is an agency of the federal government of the United States of America and is also the Conservator for Fannie Mae.

4.      The Conservator has succeeded by law to all of Fannie Mae's "rights, titles, powers, and privileges."  12 U.S.C. § 4617(b)(2)(A)(i).

5.      During the Conservatorship, "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FHFA], nor shall any involuntary lien attach to the property of [FHFA]."  12 U.S.C. § 4617(j)(3).

6.      Fannie Mae's interest at issue is property of the Conservator.  Therefore, applying NRS Chapter 116 or other state law in a manner that extinguishes Fannie Mae's interest in the Property would violate 12 U.S.C. § 4617(j)(3).

7.     12 U.S.C. § 4617(j)(3) preempts any state law that would permit a foreclosure on a superpriority lien to extinguish a property interest of Fannie Mae while it is under FHFA's conservatorship.

8.     At no time did Plaintiff, Elkhorn Community Association, or the trustee or agent of either Plaintiff or Elkhorn Community Association obtain consent from FHFA to extinguish the Deed of Trust or otherwise extinguish Fannie Mae's interest.

9.     Pursuant to 12 U.S.C. § 4617(j)(3), the foreclosure sale conducted by Elkhorn Community Association (the "HOA") could not extinguish Fannie Mae's interest in the Deed of Trust.

10.     FHFA and Fannie Mae are entitled to a determination from this Court, pursuant to 28 U.S.C. § 2201 and NRS § 40.010, that 12 U.S.C. § 4617(j)(3) precludes an HOA sale from extinguishing Fannie Mae's interest in the Deed of Trust.

## SECOND COUNTERCLAIM

(Quiet Title versus Plaintiff)

1.     FHFA incorporates by reference the responses of all previous paragraphs, as if fully set forth herein.

2.     Pursuant to 28 U.S.C. § 2201 and NRS § 40.010, this Court has the power and authority to resolve the Plaintiff's adverse claims in the Property.

3.     The Deed of Trust is a first secured interest on the Property as intended by NRS 116.3116(2)(b).

4.     FHFA, as Fannie Mae's conservator, has succeeded by law to all of Fannie Mae's "rights, titles, powers, and privileges." 12 U.S.C. § 4617(b)(2)(A)(i).

5.     Plaintiff claims an interest in the Property through its purported purchase of the Property at an HOA foreclosure sale on or about September 17, 2013, and claims that the foreclosure sale extinguished the Deed of Trust.

6.     Pursuant to 12 U.S.C. § 4617(j)(3), "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [FHFA], nor shall any

6

involuntary lien attach to the property of [FHFA]."

7.    Based on the adverse claims being asserted by the parties, FHFA and Fannie Mae are entitled to a judicial determination regarding the rights and interests of the respective parties to the case.

8.    FHFA and Fannie Mae are entitled to a determination from this Court, pursuant to 28 U.S.C. § 2201 and NRS § 40.010, that the HOA sale did not extinguish Fannie Mae's interest in the Deed of Trust.

9.    FHFA and Fannie Mae are entitled to a determination from this Court, pursuant to 28 U.S.C. § 2201 and NRS § 40.010 that Fannie Mae's interest in the Deed of Trust is superior to the interest, if any, acquired by Plaintiff through the foreclosure deed.

**PRAYER FOR RELIEF**

WHEREFORE, FHFA prays for the following relief:

1.    That Plaintiff take nothing by way of its Complaint;

2.    That the Court declare that 12 U.S.C. § 4617(j)(3) preempts any Nevada law that would permit a foreclosure on a superpriority lien to extinguish Fannie Mae's interest while it is under FHFA's conservatorship;

3.    That the Court declare that the HOA sale did not extinguish Fannie Mae's interest in the Property and thus did not convey the Property free and clear to Plaintiff;

4.    That the Court declare that Fannie Mae's property interest is superior to the interest, if any, of Plaintiff;

5.    That FHFA be awarded reasonable attorneys' fees and costs; and

6.    That FHFA receive such other relief as the Court deems just and proper.

DATED this 1st day of May, 2015.

FENNEMORE CRAIG JONES VARGAS

By: /s/  Leslie Bryan Hart
Leslie Bryan Hart, Esq. (SBN4932)
John D. Tennert, Esq. (SBN 11728)

7

300 S. Second St., Suite 1510
Reno, Nevada 89501
Tel: 775-788-2228 Fax: 775-788-2229
*lhart@fclaw.com; jtennert@fclaw.com*

and

ARNOLD & PORTER LLP

Asim Varma, Esq.*
*Asim.Varma@aporter.com*
Howard N. Cayne, Esq.*
*Howard.Cayne@aporter.com*
Michael A.F. Johnson, Esq.*
*Michael.Johnson@aporter.com*
555 12th Street NW
Washington, DC 20004
Tel: (202) 942-5000  Fax: (202) 942-5999
**Pro Hac Vice* Petitions to be Submitted*

*Attorneys for Proposed Intervenor Federal Housing
Financing Agency*

8